U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DEC 22 2006
CLERK, U.S. DISTRICT COURT
By ________ Deputy

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VILLAS AT PARKSIDE PARTNERS d/b/a VILLAS AT PARKSIDE, LAKEVIEW AT PARKSIDE PARTNERS, LTD. d/b/a LAKEVIEW AT PARKSIDE, and CHATEAU RITZ PARTNERS d/b/a CHATEAU DE VILLE, | § | 3-06CV2371-L |
| Plaintiffs, | § | CIVIL ACTION NO. ________ |
| v. | § | |
| THE CITY OF FARMERS BRANCH, TEXAS and BOB PHELPS, TIM O'HARE, BILL MOSES, CHARLIE BIRD, JAMES SMITH, BEN ROBINSON, and JIM OLK, in their official capacities, | § | |
| Defendants. | § | |

**PLAINTIFFS' COMPLAINT FOR**
**DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Villas at Parkside Partners d/b/a Villas at Parkside ("Villas"), Lakeview at Parkside Partners, Ltd. d/b/a Lakeview at Parkside ("Lakeview"), and Chateau Ritz Partners d/b/a Chateau de Ville ("Chauteau") file this Complaint for Declaratory and Injunctive Relief against defendants The City of Farmers Branch, Texas (the "City" or "Farmers Branch"); Bob Phelps, in his official capacity as Mayor of Farmers Branch ("Mayor Phelps"); City Councilmen Tim O'Hare ("O'Hare"), Bill Moses ("Moses"), Charlie Bird ("Bird"), James Smith ("Smith"), and Ben Robinson ("Robinson"), each in their official capacities as members of the Farmers Branch City Council (the "City Council"); and Jim Olk ("Olk"), in his official capacity as Building Inspector of Farmers Branch, as follows:

## I.

## PRELIMINARY STATEMENT

On Monday, November 13, 2006, the City Council of Farmers Branch adopted Ordinance No. 2892 (the "Ordinance"), a politically-charged and highly-controversial law targeting members of the City's immigrant population (the overwhelming majority of whom are Hispanic) and requiring apartment owners and managers to police the citizenship or immigration status of their tenants and others living within their dwelling units. The Ordinance was patterned largely after similar laws adopted in Hazelton, Pennsylvania and Escondido, California — both of which are now the subject of federal court injunctions prohibiting their enforcement.[1]

Pursuant to the Ordinance, the City deputized itself as an unofficial junior partner to federal authorities for the sole purpose of "assisting the United States Government in its enforcement of the Federal Immigration Laws." In that self-appointed and unauthorized role, the City has involuntarily conscripted apartment owners, including plaintiffs, to perform the duty of checking their tenants' and prospective tenants' citizenship and/or immigration "papers" – or else suffer criminal penalties for any failure or inability to do so. Indeed, the Ordinance *prohibits* plaintiffs and other apartment landlords from entering into or renewing any lease agreements with persons who, for whatever reason, are unable to establish their citizenship or residency status by producing satisfactory proof thereof. Put simply, the Ordinance creates a presumption of ineligibility to enter into rental contracts, thereby imposing an impermissible burden on the lawful pursuit of plaintiffs' business.

---

[1] *Garrett v. City of Escondido*, No. 06-CV-2434-JAH (NLS) (S.D. Cal. December 15, 2006) (order granting stipulated final judgment and permanent injunction); *Lozano v. City of Hazleton*, No. 6-CV-56-JMM (M.D. Penn. October 31, 2006) (order granting temporary restraining order).

The Ordinance has unfairly placed plaintiffs in a political maelstrom having nothing to do with the legitimate municipal regulation of health and safety issues related to the housing provided by plaintiffs. Rather, the real intent, and certain effect, of the Ordinance is to discourage members of the Hispanic population, whether citizens or immigrants (legal or illegal), from taking up residence in Farmers Branch. That intent is further reflected by other recent city ordinances and resolutions specifically directed at the Hispanic population, including one "declaring English as the official language of the City of Farmers Branch." Although the Ordinance, by its terms, does not become effective until January 12, 2007, its adoption has already had an injurious impact upon plaintiffs' leasing activities – resulting in a loss of income. Unless this Court enjoins the enforcement of the Ordinance, the harm to plaintiffs will multiply once it takes effect.

It is not the function of the City to attempt to enforce federal immigration laws, particularly in the unauthorized and ham-fisted manner represented by the Ordinance. Nor is it lawful for the City to impair, restrict, and harm citizens' rights to enter into contracts and do business with others, including aliens residing in this country – particularly when the City's actions are aimed *solely* at apartment owners and do not purport to affect the commercial relations and contract rights of *any other* business or provider of goods or services located within Farmers Branch. In sum, not only is the Ordinance ill-advised in the extreme, it is an invalid and unconstitutional intrusion into, and deprivation of, plaintiffs' fundamental rights. Accordingly, plaintiffs respectfully request that this Court issue a declaratory judgment invalidating the Ordinance and enter an order preliminarily and permanently enjoining defendants' enforcement thereof.

II.

## PARTIES

### A. Plaintiffs

1. Villas is a Texas general partnership which owns and operates the Villas at Parkside, a 207-unit apartment complex built in 1999 and located at 4000 Park Side Center Blvd. in Farmers Branch, Texas.

2. Lakeview is a Texas limited partnership which owns and operates Lakeview at Parkside, a 573-unit apartment complex built in 1996 and 1998 and located at 3950 and 3990 Spring Valley Rd. in Farmers Branch, Texas.

3. Chateau is a Texas general partnership which owns and operates the Chateau De Ville, a 161-unit apartment complex built in 2002 and located at 4040 Spring Valley Rd. in Farmers Branch, Texas.

### B. Defendants

4. The City is a municipal corporation located in Dallas County, Texas, and may be served by serving Mayor Phelps.

5. Mayor Phelps is a resident of Farmers Branch and may be served with process at 12705 Epps Field, Farmers Branch, Texas 75234.

6. O'Hare is a resident of Farmers Branch and may be served with process at 2606 Dixiana, Farmers Branch, Texas 75234.

7. Moses is a resident of Farmers Branch and may be served with process at 3118 Pin Oak Court, Farmers Branch, Texas 75234.

8. Bird is a resident of Farmers Branch and may be served with process at 14415 Valley Hi Circle, Farmers Branch, Texas 75234.

9. Smith is a resident of Farmers Branch and may be served with process at 2811 Bay Meadow Circle, Farmers Branch, Texas 75234.

10. Robinson is a resident of Farmers Branch and may be served with process at 13824 Wooded Creek, Farmers Branch, Texas 75234.

11. Olk is a resident of Farmers Branch, and may be served with process at 13000 William Dodson, Farmers Branch, Texas 75234.

## III.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343; 42 U.S.C. §§ 1981; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

13. This Court has personal jurisdiction over defendants, and venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b), because all defendants reside in this District.

## IV.

## FACTS

### A. Plaintiffs: Substantial Contributors To The Farmers Branch Economy

14. The apartment complexes owned by plaintiffs are well-maintained and professionally-managed properties offering a host of amenities in each unit and a number of fitness, clubhouse, and other attractive facilities for the common use of their tenants. Monthly rents among plaintiffs' three complexes range from $690 for one-bedroom units to $2,322 for two-bedroom units.

15. Plaintiffs rent their units not only to individuals and families, but also to corporations on either a short-term or long-term basis. Corporate renters, in turn, make their units available to employees, actual or prospective customers and clients, consultants, and other invitees. Plaintiffs have substantial competition in the form of renters of single-family properties, hotels and motels (including, but not limited to, "extended stay" facilities), and other apartment complexes located in Farmers Branch and other municipalities. None of those competitors (other than apartment complexes in Farmers Branch) is subject to the Ordinance at issue in this action.

16. Plaintiffs' apartment complexes require and utilize the paid services of a number of rental agents, management personnel, maintenance workers, employees, and independent contractors, many of whom live in Farmers Branch. Moreover, plaintiffs' tenants purchase a substantial portion of the goods and services they require from businesses located within Farmers Branch – and many of those tenants are themselves employed by such businesses. In short, plaintiffs and the apartment complexes they own and operate have a beneficial economic impact on the City, and plaintiffs have conducted themselves as good citizens and significant contributors to the local community.

## B. Farmers Branch: A City In Transition At The Outset Of The Twenty-First Century

17. Farmers Branch was founded in 1841 and was formally incorporated as a city on February 2, 1856. It is a home rule municipality that operates in accordance with a "council-manager" form of government. The individual defendants (with the exception of Olk, the City's Building Inspector) currently make up the six-member City Council.

18. Since 1970, the City of Farmers Branch has grown from a small, predominantly Anglo suburban community with a declining population into a growing city of almost 30,000

people. Today it is centrally located in the North Dallas Metroplex with approximately 80 corporations and more than 2,600 businesses making their home there.

19. According to the U.S. 2000 Census figures, the racial composition of the City is 55.8% White, 37.2% Hispanic/Latino, and 7% other races. Approximately 25% of the City's population is comprised of foreign-born individuals, of which 82% are reported as being born in Latin America. Without regard to lawful immigration status, the Census identifies over 5,500 persons in the City as being non-U.S. citizens. Since 2000, the ratio of Hispanics/Latinos to Anglos has continued to increase in Farmers Branch. It is against that backdrop that the City Council set out to effect the ethnic composition of the City.

**C. The O'Hare Proposal: An Unsupported And Inappropriate Response To Ethnic Diversity In Farmers Branch.**

20. In August 2006, Councilman O'Hare, who never received more than 45 votes in a City election, proposed that the City undertake a "crack down" on illegal immigration by, *inter alia*, penalizing businesses that employ illegal aliens, making English the City's official language, eliminating subsidies for City-funded youth programs that involve the children of illegal immigrants, and prohibiting landlords from leasing to illegal aliens. Without any empirical data to support his assertions, O'Hare declared that the City "suffered" a poor reputation of its public schools, a lack of "acceptable appreciation" in property values, and a high crime rate. Lacking any proof, O'Hare nonetheless concluded that an invasion of illegal Mexican immigrants into the City was responsible for those "problems."

21. Tellingly, Mayor Phelps responded to O'Hare's rhetoric by publicly disputing O'Hare's conclusions: "[They're] not true . . . Our crime rate is down, our schools have moved up . . . property values are up." Indeed, Mayor Phelps appropriately described O'Hare's proposals as "misguided" and "a ploy to gain personal recognition." Despite the fact that a

substantial portion, and perhaps even a majority, of the citizens of Farmers Branch had similar misgivings about O'Hare's proposal, the City Council (no member of which has ever garnered more than 750 votes in a City election) pressed forward with transforming O'Hare's political agenda into law.

**D. The Illegal Landlord Conscription Act: Ordinance No. 2892.**

22. On November 13, 2006, despite the dearth of factual support for his position, O'Hare, along with the other members of the City Council, adopted, as a so-called "emergency measure," Ordinance No. 2892, entitled:

> AN ORDINANCE AMENDING CHAPTER 26, BUSINESSES, ARTICLE IV APARTMENT COMPLEX RENTAL, MANDATING A CITIZENSHIP CERTIFICATION REQUIREMENT PURSUANT TO 24 C.F.R. 5 ET SEQ.; PROVIDING FOR ENFORCEMENT; PROVIDING A PENALTY; PROVIDING A SEVERABILITY CLAUSE; PROVIDING AN EFFECTIVE DATE; AND DECLARING AN EMERGENCY.

23. The Ordinance has at least five express references to Title 24 of the Code of Federal Regulations § 5, *et seq.* Indeed, the very title of the Ordinance (set forth above) declares that the "citizenship certification requirement" established therein is "pursuant to 24 C.F.R. § 5, *et seq.*" However, those regulations do not purport to control, affect, or govern rental agreements between private landlords and their tenants which are unrelated to any federal housing assistance program. Thus, contrary to the language of the Ordinance, it does not comport with federal housing law but, instead, imposes new and extraordinary citizenship and immigration restrictions on purely private residential lease agreements. Indeed, even with respect to government-supported housing programs, 24 C.F.R. § 5, *et seq.* does not absolutely prohibit all so-called "illegal immigrants" from receiving federal assistance.

24. Nevertheless, the Ordinance provides, as a condition to entering into any "apartment complex" lease or rental agreement, including any renewals or extensions thereof,

that "the owner and/or property manager" shall require the submission of satisfactory "evidence of citizenship or eligible immigration status for each tenant family," and that such evidence is required of "[e]ach family member [an undefined term], regardless of age."

25. In addition, the Ordinance requires plaintiffs and other owners and/or managers of apartment complexes located within Farmers Branch to "request and review original documents of eligible citizenship or immigration status," to "retain photocopies of the documents for [their] own records and return the original documents to the family," and to hold such records "for a period of not less than two (2) years after the end of the family's lease or rental." As evidence of U.S. citizenship, new and renewing tenants must provide "a signed declaration of U.S. citizenship or U.S. nationality," to be "confirmed by requiring presentation of a United States passport or other appropriate documentation in a form designated by the Immigration and Customs Enforcement Department ('ICE') as acceptable evidence of citizenship status." As evidence of "eligible immigration status," new and renewing non-citizen (*i.e.*, alien) tenants must submit: (1) a "signed declaration of eligible immigration status," (2) a "form designated by the Immigration and Customs Enforcement Department ('ICE') as acceptable evidence of immigration status;" and (3) a "signed verification consent form." In short, the Ordinance conscripts plaintiffs and other similarly-situated Farmers Branch multi-family apartment owners as unwilling citizenship and immigration officers, for the apparent purpose of gathering information for the City's unauthorized and unofficial "enforcement" of the federal immigration laws.

26. To compound the inappropriate burden placed on plaintiffs, the Ordinance provides that any failure by the owner and/or property manager to comply with the provisions of

the Ordinance results in a misdemeanor carrying fines of up to $500 per day per violation. Separate offenses are deemed committed on each day a violation occurs or continues.

27. Although the City Council declared that an "emergency" existed, the Ordinance was adopted without public deliberation, consideration, or debate. In fact, the City passed the Ordinance without placing into the public record *any* evidence demonstrating the necessity or utility of the Ordinance, let alone the existence of any alleged "emergency."

**E. The Referendum Petition: Substantial Doubt Exists Whether The Ordinance Has The Voters' Support**

28. Following the passage of the Ordinance, citizens of Farmers Branch organized to challenge the new law. Pursuant to the City Charter, if five percent (5%) of the City's registered voters petition the City, the Ordinance must be either: (1) repealed by the City Council; or (2) submitted to the voters of the City for approval or disapproval. On December 13, 2006, a petition was filed with the City protesting the "adoption, application and enforcement of the Ordinance in the absence of voter approval." The petition contained over 1,700 signatures, including those of over 1,200 Farmer Branch registered voters (well in excess of the threshold to force repeal or a vote).

29. Pursuant to the City Charter, upon receipt of the petition on December 13, 2006, the City Secretary was required to "[i]mmediately . . . present said petition to the Council," upon which the Council was to "immediately reconsider such ordinance . . . and, if it does not entirely [repeal] the same, shall submit it to a proper vote . . ." Notwithstanding the foregoing, defendants have refused to comply with their obligations. As it stands, the Ordinance is to become effective on January 12, 2007.

**F. The Regulation Of Citizenship And Immigration Matters: The Exclusive Province Of The Federal Government.**

30. Pursuant to Article I, Section 8, Clauses 3 and 4 of the United States Constitution, the federal government has the power to "establish a uniform Rule of Naturalization" and to "regulate Commerce with foreign Nations." In fact, the Supreme Court of the United States has held that the federal government's power to control immigration is inherent in the nation's sovereignty.

31. Pursuant to its exclusive power over matters of immigration, the federal government has established a comprehensive system of administrative agencies, statutes, regulations, and procedures to determine, subject to judicial review, whether and under what conditions aliens may enter, live, work in the United States – and, if desired, become citizens thereof.

32. The federal government has chosen to allow certain non-citizens to remain in the United States, even though such persons may not have valid immigrant (permanent) or non-immigrant (temporary) status and/or may otherwise be removable or subject to deportation under the Federal Immigration and Nationality Act. For instance, under federal law, various categories of persons can receive federal permission to work, and implicitly to stay and reside, in the United States even though they may be violating immigration laws. Moreover, persons with pending applications to adjust to a lawful status are often permitted to remain in the United States despite a lack of valid immigrant status. Of course, determinations of who may continue living here are within the exclusive province of the United States Government – and any attempt by state or local officials to usurp that function constitutes an inappropriate interference with a federal function.

33. Pursuant to 31 U.S.C. § 1342, officers of the United States Government may not accept voluntary services in connection with the performance of a governmental function unless authorized by law. In the field of immigration, the circumstances under which the federal government authorizes the voluntary assistance of states and municipalities are limited. Pursuant to 8 U.S.C. § 1357, the U.S. Attorney General may enter into a written agreement with a state, or any political subdivision thereof, permitting "qualified" employees "to perform a function of an immigration officer in relation to the investigation, apprehension, or detention of aliens in the United States."

34. Notwithstanding the fact that the Ordinance recites that its "sole intention . . . is for the purposes of assisting the United States Government in its enforcement of the Federal Immigration Laws," there exists no agreement between Farmers Branch and the United States Attorney General (or any other federal governmental official or agency) permitting the City or any of its employees (including defendant Olk, the City's Building Inspector, who will be responsible for enforcing the Ordinance) to perform the function of an immigration officer or otherwise assist in the enforcement of the U.S. immigration laws. Thus, the Ordinance was adopted without authority and for purposes unrelated to the City's legitimate interests as a municipal government.

**G. The Consequence Of Defendants' Unlawful Ordinance: Plaintiffs Will Suffer Irreparable Injury In The Absence Of This Court's Intervention And The Issuance Of Appropriate Relief.**

35. Unless this Court declares the Ordinance to be invalid and enjoins the enforcement thereof, plaintiffs will suffer irreparable injury. On the one hand, compliance with the Ordinance will likely result in a substantial loss of plaintiffs' business due to: (1) existing tenants' inability, failure, or refusal to timely produce all the documents required by the Ordinance in the form specified therein; and (2) prospective tenants' election not to consider

plaintiffs' apartment complexes, or other multi-family residential landlords located within Farmers Branch, due to the burden and inconvenience imposed upon them by the documentary requirements of the Ordinance – and the comparative ease with which other suitable competing accommodations can be obtained in neighboring municipalities or through alternate sources (such as hotels and single-family rental properties). On the other hand, any failure by plaintiffs to comply with the Ordinance, however unintentional (including, but not limited to, the inability to obtain citizenship and immigrant status documentation from plaintiffs' corporate tenants), will automatically be deemed "misdemeanors" under the Ordinance, exposing plaintiffs to daily and continuing fines under a law adopted by defendants for the sole stated purpose of assisting, without the authority to do so, the federal government in enforcing U.S. immigration laws.

36. Defendants' adoption and threatened enforcement of the Ordinance has violated, and will continue to do injury to, plaintiffs' constitutional, statutory, and common law rights. Therefore, judicial intervention and appropriate declaratory and injunctive relief is necessary to prevent further deprivations and violations of plaintiffs' rights and property interests.

37. As a result of defendants' conduct, plaintiffs have been required to obtain the undersigned counsel to prepare this Complaint and prosecute and present the claims asserted herein.

## V.

## CLAIMS

### A. Count One: Violation of the Supremacy Clause

38. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

39. Article VI of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or

which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution of Laws of any State to the Contrary notwithstanding."

40. The Supremacy Clause mandates that federal law preempts state regulation of any area over which Congress has expressly or impliedly exercised exclusive authority or which is constitutionally reserved to the federal government. The power to regulate immigration is exclusively a federal power.

41. The federal government has enacted a comprehensive statutory and regulatory scheme governing immigration, including the Immigration and Nationality Act.

42. The Ordinance, in its entirety, is admittedly a law purporting to regulate immigration and the incidents thereof. The Ordinance infringes upon, interferes with, and usurps the federal government's exclusive power over immigration and naturalization and its power to regulate foreign affairs.

43. The Ordinance is, therefore, preempted because it attempts to legislate in fields occupied by the federal government and because it conflicts with federal laws, regulations, policies, and objectives. The Supremacy Clause of the U.S. Constitution requires that any state law or local regulation the conduct of noncitizens must be invalidated if it: (1) amounts to an attempt to regulate immigration; or (2) operates in a field occupied by the federal government or stands as an obstacle to federal law. The Ordinance fails under both standards.

44. By denying plaintiffs the right and ability to rent to any tenant who does not satisfy the extensive documentation requirements prescribed therein, the Ordinance runs roughshod over this complex system of federal classification and discretion. Ultimately, the effect of the Ordinance is to upset the system established by Congress by implementing Farmers

Branch's own enforcement mechanisms, penalties, and interpretations in place of the federal system.

45. As a result of the Ordinance's violation of the Supremacy Clause, plaintiffs will lose current or prospective tenants who may otherwise be permitted by the federal government to live and/or work in the United States, but will nevertheless be barred from renting apartments in Farmers Branch. In addition, the chilling effects of the Ordinance will generally discourage many prospective tenants of Hispanic descent from even submitting rental applications with plaintiffs.

46. Accordingly, this Court should declare the Ordinance unconstitutional and preliminarily and permanently enjoin its enforcement.

**B. Count Two: Violation of 42 U.S.C. §1981**

47. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

48. Plaintiffs have a fundamental right to contract and to enjoy the full and equal benefit of all laws. Pursuant to 42 U.S.C. §1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State or Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

49. Congress explicitly prohibits discrimination under the color of law based on alienage and race. Furthermore, Congress deliberately used "all persons" instead of "citizens" in order to reflect the language of the Fourteenth Amendment that extended the guarantee of equal protection under the laws to "any person within the jurisdiction of the United States."

50. Plaintiffs are entitled to the protections and benefits afforded by Section 1981, and the Ordinance improperly interferes with plaintiffs' fundamental right to contract with "all persons." By enacting the Ordinance, Farmers Branch has violated plaintiffs' fundamental rights under 42 U.S.C. §1981, and prevents plaintiffs from contracting for the rental units they own. Specifically, the Ordinance impinges upon plaintiffs' right to enter into rental contracts with aliens and citizens alike. Moreover, because the Ordinance deprives certain aliens and U.S. citizens of the right to enter into lease agreement with owners of apartment complexes located within Farmers Branch, plaintiffs are among those whose rights to contract necessarily suffer as a result.

51. Unless the Ordinance is permanently enjoined and declared invalid, the fundamental rights of plaintiffs will be violated.

52. Accordingly, this Court should declare the Ordinance invalid under federal law and preliminarily and permanently enjoin its enforcement.

**C. Count Three: Violation of Section 214.903 Of The Texas Local Government Code**

53. Plaintiffs hereby incorporate the allegations in the preceding paragraphs as if fully set forth herein.

54. Section 214.903 of the Texas Local Government Code provides that "the governing body of a municipality *may* adopt fair housing ordinances that provide fair housing rights, compliance duties, and remedies that are *substantially equivalent to those granted under federal law*" (emphasis added).

55. The Ordinance twice refers to "fair housing" in the preliminary clauses purportedly justifying its adoption. Yet, as demonstrated above, the Ordinance goes far beyond federal fair housing laws with respect to the leasing of apartment units upon the presentation of satisfactory proof of citizenship or lawful immigration status. Simply put, the Ordinance is not

"substantially equivalent" to federal law and, thus, violates the applicable provisions of the Texas Local Government Act.

56. Accordingly, this Court should declare the Ordinance invalid under state law and preliminarily and permanently enjoin its enforcement.

## VI.

## JURY DEMAND

57. Plaintiffs hereby demand a trial by jury of all issues so triable.

## VII.

## REQUEST FOR RELIEF

In light of the foregoing, plaintiffs respectfully request that this Court, upon notice to defendants, issue a temporary retraining order and, following any necessary hearing with respect thereto, a preliminary injunction prohibiting the enforcement or threatened enforcement of the Ordinance pending entry of a final judgment in favor of plaintiffs and against defendants, providing for the following relief:

1. A declaration invalidating the Ordinance as unconstitutional and otherwise contrary to applicable federal and state law;
2. A permanent injunction prohibiting the enforcement or threatened enforcement of the Ordinance;
3. An award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b) and any other applicable statute;
4. Costs of Court; and
5. Any other relief, at law or in equity, to which plaintiffs may be entitled and which this Court deems just and proper.

Respectfully submitted,

**BICKEL & BREWER STOREFRONT, P.L.L.C.**

By: ______________________________
William A. Brewer III
State Bar No. 2967035
James S. Renard
State Bar No. 16768500
Michael S. Gardner
State Bar No. 24002122
Michael L. Smith
State Bar No. 24027989

1717 Main Street
Suite 4800
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR PLAINTIFFS**

RECEIVED
DEC 22 2006
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

JS 44 (Rev. 10/06)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

ORIGINAL

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| SEE ATTACHED | THE CITY OF FARMERS BRANCH, TEXAS and BOB PHELPS, TIM O'HARE, BILL MOSES, CHARLIE BIRD, JAMES SMITH, BEN ROBINSON and JIM OLK, in their official capacity |
| (b) County of Residence of First Listed Plaintiff: DALLAS (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant: DALLAS (IN U.S. PLAINTIFF CASES ONLY) NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
| (c) Attorney's (Firm Name, Address, and Telephone Number): William A. Brewer III, Bickel & Brewer, 1717 Main Street, Suite 4800, Dallas, TX 75201 (214) 653-4000 | Attorneys (If Known): **3-06CV2371-L** |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence

Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☒ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☒ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify) ☐ 6 Multidistrict Litigation ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 **DEMAND $**

CHECK YES only if demanded in complaint: **JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED

(See instructions): JUDGE ____ DOCKET NUMBER ____

DATE: 12/22/2006 SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ____ AMOUNT ____ APPLYING IFP ____ JUDGE ____ MAG. JUDGE ____

VILLAS AT PARKSIDE PARTNERS d/b/a VILLAS AT PARKSIDE, LAKEVIEW AT PARKSIDE PARTNERS d/b/a LAKEVIEW AT PARKSIDE, and CHATEAU RITZ PARTNERS d/b/a CHATEAU DE VILLE,

Plaintiffs,