IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VILLAS AT PARKSIDE PARTNERS d/b/a VILLAS AT PARKSIDE, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:06-CV-2371-L (consolidated with CA No. 3:06-CV-2376-L |
| THE CITY OF FARMERS BRANCH, | § § | and CA No. 3:07-CV-0061-L) |
| Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER
## GRANTING TEMPORARY RESTRAINING ORDER

Before the court are: (1) [Vasquez] Plaintiffs' Application for Temporary Restraining Order, filed May 15, 2007; (2) [Barrientos][1] Plaintiffs' Application for Temporary Restraining Order, filed May 15, 2007; and (3) [Villas] Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction, filed May 16, 2007. After careful consideration of the applications, response, replies, record, and applicable law, and because Farmers Branch Ordinance 2093 is preempted by the Supremacy Clause, the court **grants** the Vasquez Plaintiffs' Application for Temporary Restraining Order, **grants** the Villas Plaintiffs' Application for Temporary Restraining Order**,** and **denies** the Barrientos Plaintiffs' Application for Temporary Restraining Order.

---

[1]Upon inquiry from the court's judicial assistant, it was determined that the correct surname for the lead plaintiff in this case, originally action 3:07-CV-0061-L, is "Barrientos." Indeed, the appendix filed by these plaintiffs in support of their application for temporary restraining order spells the lead plaintiff's surname as Barrientos. The clerk of the court is **directed** to make this change on the docket sheet.

**Memorandum Opinion and Order Granting Temporary Restraining Order – Page 1**

I.      **Procedural and Factual Background**

Plaintiffs ask the court to enjoin Farmers Branch Ordinance 2903 (the "Ordinance"), an ordinance adopted by the Farmers Branch City Council on January 22, 2007. The Ordinance was the second iteration of a law originally adopted by the City Council on November 13, 2006, Ordinance 2892. A state court issued a temporary restraining order enjoining implementation of Ordinance 2892 on January 9, 2007, finding that Ordinance 2892 "may have been approved and adopted in violation of the Texas Open Meetings Act." Villas App. 19. Thereafter, the City Council repealed Ordinance 2892 and adopted the Ordinance. The Ordinance called for an election to allow the voters of Farmers Branch to vote for or against it. Ord. § 5.

On May 12, 2007, the voters of Farmers Branch approved the Ordinance by a margin of 4,058 "for," and 1,941 "against." The effective date of the Ordinance is May 22, 2007. *Id*. § 7. The preamble to the Ordinance states that "the City Council finds and determines that the benefits and protections provided through the HUD citizenship and immigration status certification processes would also benefit the City;" that "the City of Farmers Branch is authorized to adopt ordinances pursuant to its police power to protect the health, safety, and welfare of its citizens;" and that "the City of Farmers Branch has determined that it is a necessity to adopt citizenship and immigration certification requirements for apartment complexes to safeguard the public, consistent with the provisions of 24 [Code of Federal Regulations] 5, et seq." *Id.* Preamble. The Ordinance also states that "the purposes of this Ordinance are to promote the public health, safety, and general welfare of the public." *Id*.

The Ordinance amends Chapter 26, Article IV of the City's Code of Ordinances relating to apartment complex rental. Specifically, the Ordinance adds language to section 26-116(d)(3) and

creates a new section 26-116(f) titled "Citizenship or Immigration Status Verification." *Id*. § 3(A)-(B).

Subsection (1) of the new section (f) defines various terms used in the section, and states that the definitions are consistent with 24 CFR 5.504. *Id*. § 3(B)(f)(1). The term "Evidence of citizenship or eligible immigration status" is defined as "the documents which must be submitted to evidence citizenship or eligible immigration status for residency in the United States." *Id*. "Citizen" is defined as "a citizen or national of the United States." *Id*. "National means a person who owes permanent allegiance to the United States, for example, as a result of birth in a United States territory or possession." *Id*. Noncitizen is defined as "a person who is neither a citizen nor national of the United States." *Id.*

Subsection (2) provides: "The owner and/or property manager shall require as a prerequisite to entering into any lease or rental arrangement, including any lease or rental renewals or extensions, the submission of evidence of citizenship or eligible immigration status for each tenant family consistent with subsection (3)." *Id*. § 3(B)(f)(2).

Subsection (3) relates to "Evidence of citizenship or eligible immigration status" and lists the evidence required to show tenants' citizenship or immigration status. *Id*. § 3(B)(f)(3). This section sets out the documentation that tenants must provide. Noncitizens must provide: (1) a signed declaration of "eligible immigration status;" (2) a "form designated by [United States Immigration and Customs Enforcement][2] as acceptable evidence of immigration status;" and (3) a "signed verification consent form." *Id*. § 3(B)(f)(3)(ii)(a)-(c).

---

[2]The Ordinance defines "ICE" as "Immigration and Customs Enforcement Department." The court believes that this is a misnomer, as United States Immigration and Customs Enforcement is a component of the United States Department of Homeland Security, and therefore not a separate United States Department.

**Memorandum Opinion and Order Granting Temporary Restraining Order – Page 3**

Subsection (4) outlines the owner and/or property managers' obligations with regard to the evidence of citizenship or "eligible immigration status:"

> (i) The owner and/or property manager shall request and review original documents of eligible citizenship or immigration status. The owner and/or property manager shall retain photocopies of the documents for its own records and return the original documents to the family. Copies shall be retained by the owner and/or property manager for a period of not less than two (2) years after the end of the family's lease or rental.
>
> (ii) The owner and/or property manager shall require that each family member submit evidence of citizenship or immigration status only once during continuous occupancy. The owner and/or property manager is prohibited from allowing the occupancy of any unit by any family which has not submitted the required evidence of citizenship or eligible immigration status under this Section . . . .

*Id.* § 3(B)(f)(4).

Finally, the Ordinance includes a section describing penalties for violation. Specifically, section 6 of the Ordinance provides: "any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction thereof shall be fined in a sum not to exceed $500 and a separate offense shall be deemed committed upon each day during or on which a violation occurs or continues." *Id.* § 6.

Three groups of plaintiffs[3] now challenge the Ordinance and ask the court to temporarily restrain the effective date and enforcement of the Ordinance. Plaintiffs argue that the Ordinance is preempted by federal law, that the Ordinance violates the Contracts Clause of the United States

---

[3] The three groups of plaintiffs correspond to the plaintiffs who originally brought the three cases consolidated by the court on April 18, 2007. The Villas Plaintiffs are the owners and operators of apartment complexes in Farmers Branch. The Vasquez Plaintiffs include residents of apartment complexes in Farmers Branch as well as the owners and managers of apartment complexes in the city. The Barrientos Plaintiffs operate retail businesses in Farmers Branch. All plaintiffs contend they will be adversely affected by enforcement of the Ordinance.

**Memorandum Opinion and Order Granting Temporary Restraining Order – Page 4**

Constitution, that the Ordinance violates procedural and substantive due process, that the Ordinance violates the Equal Protection Clause of the United States Constitution, and that the Ordinance violates the Texas Local Government Code.

## II. Legal Standard – Application for Temporary Restraining Order

The purpose of a temporary restraining order is to "preserv[e] the status quo and prevent[] irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). Any temporary restraining order, therefore, is a temporary measure to protect rights until a hearing can be held.

There are four prerequisites for the extraordinary relief of a temporary restraining order or preliminary injunction. To prevail, a plaintiff must demonstrate: (i) a substantial likelihood of success on the merits; (ii) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (iii) that greater injury will result from denying the temporary restraining order than from its being granted; and (iv) that a temporary restraining order will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987); *Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974) (*en banc*). The party seeking such relief must satisfy a cumulative burden of proving each of the four elements enumerated before a temporary restraining order or preliminary injunction can be granted. *Mississippi Power and Light Co. v. United Gas Pipeline,* 760 F.2d 618, 621 (5th Cir. 1985); *Clark*, 812 F.2d at 993. Otherwise stated, if a party fails to meet *any* of the four requirements, the court cannot grant the temporary restraining order or preliminary injunction.

### III.   Analysis

Before delving into the legal arguments regarding the Ordinance, the court recognizes that the voters of Farmers Branch overwhelmingly voted in favor of the Ordinance. Public approval of the Ordinance, by itself, does not guide the court as to whether the Ordinance complies with the law. The court is mindful that both proponents and opponents of the Ordinance are passionate about their positions and the policy implications of the Ordinance. The court, however, does not consider or question the policy or wisdom behind the Ordinance, but rather limits its review to the legal issues raised by the parties in relation to the Ordinance. Accordingly, the court considers *solely* whether Plaintiffs have satisfied the four elements required for a temporary restraining order.

### A.   Barrientos Plaintiffs' Application for Temporary Restraining Order

The city argues that the court must dismiss the Barrientos Plaintiffs' application for temporary restraining order because they have not pleaded any claims based upon the Ordinance. The Barrientos Complaint, filed January 11, 2007, pleads violations of the Supremacy Clause, Equal Protection Clause, procedural due process under the Fourteenth Amendment, and 42 USC § 1981. The Complaint was filed before the enactment of the Ordinance, and bases its claims upon Ordinance 2892, the previous version of the Ordinance that was repealed by the City Council on January 22, 2007. Although several months have passed since Ordinance 2892 was repealed and the Ordinance was adopted, the Barrientos Plaintiffs have not amended, or sought leave to amend, their Complaint.

Accordingly, the court determines that the Barrientos Plaintiffs' application for temporary restraining order cannot establish the four elements required for injunctive relief. The Barrientos Complaint and declarations filed in support of their application allege claims premised entirely upon

Ordinance 2892, which has been repealed by the city of Farmers Branch. There is no danger of irreparable harm to the Barrientos Plaintiffs based upon their pleaded claims, because their claims are based upon a repealed ordinance. Accordingly, the court **denies** the Barrientos Plaintiffs' application for temporary restraining order.

    **B.**    **Villas Plaintiffs and Vasquez Plaintiffs' Applications**

The Villas and Vasquez Plaintiffs amended their Complaints, and the live pleadings in those cases assert claims based upon the Ordinance. Although the two groups of Plaintiffs filed separate applications, Farmers Branch has filed a single response, and the arguments made by Plaintiffs are overlapping. The court therefore considers these two applications together.

    **1.**    **Likelihood of Success on the Merits**

Plaintiffs must establish a substantial likelihood of success on the merits. *Clark*, 812 F.2d at 993. Plaintiffs argue that the Ordinance is unconstitutional on a number of grounds: (1) the Ordinance is preempted and therefore invalid under the Supremacy Clause of the Constitution; (2) the Ordinance violates substantive and procedural due process; (3) the Ordinance violates the Equal Protection Clause of the Constitution; (4) the Ordinance violates the Contracts Clause of the United States Constitution; and (5) the Ordinance violates the Texas Local Government Code.

The court turns first to Plaintiffs' arguments that the Ordinance is preempted by the Constitution and federal law. The Supremacy Clause of the Constitution states, "This Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby . . . ." U.S. Const., art. VI, cl. 2. The Supremacy Clause is "[a] fundamental principle of the Constitution . . . that Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000) (citing U.S. Const., art. VI, cl. 2;

*Gibbons v. Ogden*, 9 Wheat. 1, 211 (1824); *Savage v. Jones*, 225 U.S. 501, 533 (1912); and *California v. ARC America Corp.*, 490 U.S. 93, 101 (1989)).

The Supreme Court has held that state immigration laws can be preempted by federal law in several ways. *De Canas v. Bica*, 424 U.S. 351 (1976). In that case, the Court noted that only the federal government may issue a "regulation of immigration," which the court defined as "a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." *Id*. at 355. The Court also noted that "[e]ven when the Constitution does not itself commit exclusive power to regulate a particular field to the Federal Government, there are situations in which state regulation, although harmonious with federal regulation, must nevertheless be invalidated under the Supremacy Clause." *Id*. at 356. The Court went on to note: "[F]ederal regulation . . . should not be deemed preemptive of state regulatory power in the absence of persuasive reasons either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained." *Id*. (brackets in original) (quoting *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 142 (1963).

District courts, construing the Supreme Court's decision in *De Canas*, have noted that the decision creates three tests for determining whether a state immigration law or regulation is preempted by federal law:

> Under the first test, the Court must determine whether a state statute is a regulation of immigration. Since the power to regulate immigration is unquestionably exclusively a federal power, any state statute which regulates immigration is constitutionally prescribed.
>
> Under the second test, even if the state law is not an impermissible regulation of immigration, it may still be preempted if there is a showing that it was the clear and manifest purpose of Congress to effect a complete ouster of state power–including state power to promulgate laws not in conflict with federal laws with respect to the

**Memorandum Opinion and Order Granting Temporary Restraining Order – Page 8**

> subject matter which the statute attempts to regulate. In other words, a statute is preempted where Congress intended to occupy the field which the statute attempts to regulate.
>
> Under the third test, a state law is preempted if it stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Stated differently, a statute is preempted under the third test if it conflicts with federal law making compliance with both state and federal law impossible.

*League of United Latin American Citizens v. Wilson*, 908 F. Supp. 755, 768 (C.D. Cal. 1995) (hereinafter "*LULAC*") (internal citations and quotations omitted); *see also Garrett v. City of Escondido*, 465 F. Supp. 2d 1043, 1055 (S. D. Cal. 2006); *Equal Access Education v. Merten*, 305 F. Supp. 2d 585, 601-602 (E.D. Va. 2004).

Plaintiffs argue that the Ordinance fails each of the three tests. Defendants describe *De Canas* as a "three-pronged test" for which Plaintiffs must establish each of the three prongs. The court agrees that *De Canas* creates three separate tests to be used in determining whether a state immigration law is preempted; failure of any one of the *De Canas* tests requires the conclusion that a state law is preempted. The court now addresses the first test.

The United States Constitution grants Congress the exclusive power to "establish [a] uniform Rule of Naturalization" and to "regulate commerce with foreign nations." U.S. Const. art. I § 8, cl. 4 and 3. The Court has repeatedly held that the "[p]ower to regulate immigration is unquestionably exclusively a federal power." *De Canas*, 424 U.S. at 354 (citing *Passenger Cases*, 7 How. 283 (1849); *Henderson v. Mayor of New York*, 92 U.S. 259 (1876); *Chy Lung v. Freeman*, 92 U.S. 275 (1876); *Fong Yue Ting v. United States*, 149 U.S. 698 (1893)); *see also Plyler v. Doe*, 457 U.S. 202, 225 (1982) ("The States enjoy no power with respect to the classification of aliens. This power is committed to the political branches of the Federal Government. . . . [O]nly rarely are such matters

**Memorandum Opinion and Order Granting Temporary Restraining Order – Page 9**

relevant to legislation by a State.") (internal citations and quotations omitted); *Toll v. Moreno*, 458 U.S. 1, 10 (1982) ("Our cases have long recognized the preeminent role of the Federal Government with respect to the regulation of aliens within our borders."); *Traux v. Raich*, 36 S.Ct. 7, 11 (1915) ("The authority to control immigration . . . is vested solely in the Federal government."). The Supreme Court, nonetheless, "has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power, whether latent or exercised." *De Canas*, 424 U.S. at 355. Rather, a court must look to whether the state law is a "regulation of immigration," defined by the Supreme Court as "essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." *Id*.

In *De Canas*, the Supreme Court upheld a California statute that provided: "No employer shall knowingly employ an alien who is not entitled to lawful residence in the United States if such employment would have an adverse effect on lawful resident workers." *Id*. at 353 n.1. In determining that this statute was not a regulation of immigration, the court noted that California "adopt[ed] federal standards." *Id*. at 355. Another California proposition was held to be an impermissible regulation of immigration where the statute itself provided classification of noncitizens. *LULAC*, 908 F. Supp. at 772. The California proposition defined individuals as "(1) citizens; (2) lawfully admitted as a permanent resident; or (3) lawfully admitted for a temporary period." *Id*. The district court in that case held that "the state has created its *own* scheme setting forth who is, and who is not, entitled to be in the United States." *Id*. (emphasis in original).

A district court in Virginia, considering state university admission standards for immigrant applicants, held that after *De Canas*, the question under the first test is "whether defendants' . . .

**Memorandum Opinion and Order Granting Temporary Restraining Order – Page 10**

policies simply adopt federal standards, in which case, they are not invalid under the Supremacy Clause, or instead create and apply state standards to assess the immigration status of applicants, in which case the policies may run afoul of the Supremacy Clause." *Equal Access Education*, 305 F. Supp. 2d at 603.

Plaintiffs argue that the Ordinance is a "regulation of immigration" because it creates a new classification of immigration. The Ordinance incorporates the definitions used in 24 CFR 5.504, regulations issued by the United States Department of Housing and Urban Development outlining restrictions on federal housing subsidies to noncitizens. Plaintiffs argue that incorporating federal housing subsidy standards precludes several classes of noncitizens from renting an apartment in Farmers Branch who lawfully reside in the country but are ineligible for housing assistance. For example, federal housing assistance is not available to certain aliens lawfully residing in the United States. 42 USC § 1436a(a)(1) (allowing federal housing assistance to "alien[s] lawfully admitted for permanent residence" but "excluding, among others, alien visitors, tourists, diplomats, and students who enter the United States temporarily . . ."). Plaintiffs argue that using these standards is tantamount to the city of Farmers Branch issuing new immigration regulations.

Defendant responds that while the Ordinance does refer to 24 CFR 5, the Ordinance provides that the evidence that noncitizens must show to determine their "eligible immigration status" is simply "[a] form designated by ICE as acceptable evidence of immigration status." Ord. § 3(B)(f)(3)(ii)(b). The city argues that any legal resident may rent an apartment in Farmers Branch regardless of that resident's eligibility for federal housing subsidies. The city also argues that the Ordinance does not effect new immigration regulations. The Ordinance states: "The intention of this Ordinance and the exercise of the police power of the City is not an attempt or effort to promulgate

**Memorandum Opinion and Order Granting Temporary Restraining Order – Page 11**

new and additional Immigration Laws or to conflict in any manner with the Federal Government's promulgation and enforcement of Immigration Laws." *Id*. § 4.

The court determines that despite the disclaimer in the Ordinance, Farmers Branch has not simply adopted federal immigration regulations, as required by the first *De Canas* test, but rather has adopted federal housing regulations used to determine noncitizens' eligibility for assistance. The Ordinance, therefore, is preempted because it is a "regulation of immigration," a regulatory power reserved for the federal government. The Ordinance is rife with references to the HUD regulations, and it is clear that the Ordinance depends on the scheme set out by the HUD regulations: "the U.S. Department of Housing and Urban Development regulations stipulate that rental tenants must submit evidence of citizenship or immigration status consistent with 24 CFR 5, et seq.;" "24 CFR 5, et seq., the general HUD provisions, provide for a uniform and non-discriminatory certification process for citizenship and immigration status;" "the HUD certification process has been in place for many years and is currently in use;" "the City Council finds and determines that the benefits and protections provided through the HUD citizenship and immigration status certification processes would also benefit the City;" "the City of Farmers Branch has determined that it is a necessity to adopt citizenship and immigration certification requirements for apartment complexes to safeguard the public, consistent with the provisions of 24 CFR 5, et seq." Ord. Preamble.

The Ordinance is replete with references to "eligible immigration status," and the Ordinance defines this term as "consistent with 24 CFR 5.504." Ord. § 3(B)(f)(1). As Plaintiffs have pointed out, the HUD regulations simply define which noncitizens are eligible for federal housing subsidies, *see* 24 CFR 5.508(a); the HUD regulations do not determine whether a person is legally or illegally

in the United States. The HUD regulations require that immigration status is verified through an automated INS system or by INS itself. *See* 24 CFR § 5.512 (c)-(d). Moreover, certain individuals who are legally in the country are statutorily excepted from receiving federal housing assistance. 42 USC § 1436a(a)(1) ("excluding, among others, alien visitors, tourists, diplomats, and students who enter the United States temporarily").

The city's own evidence also establishes that the Ordinance relies heavily on the HUD regulations for the application and enforcement of the Ordinance. The city sent a letter to apartment complexes in Farmers Branch describing the "verification form requirements" adopted by city staff for compliance with the Ordinance. Def.'s App. 33. For a "noncitizen with eligible immigration status," the letter requires a signed declaration of "eligible immigration status" and one of several documents described in the letter. *Id.* at 34. The letter lists the following acceptable documents: Form I-551, Form I-94, Form I-668, Form I-668B, "receipt issued by the DHS indicating that an application for a replacement document has been entered and verified, and the document would fall into an aforementioned category," or "any other form designated by the Immigration and Customs Enforcement Department as acceptable evidence of immigration status." *Id.* The letter to the apartment complexes included samples of a declaration format, verification consent form, and owner's summary of family. *Id.* at 39-43. On the face of these documents, it is clear that they are HUD forms; each document states "HUD Occupancy Handbook" on the bottom of each page. *Id.* The "declaration format" also lists documents that must be submitted by a noncitizen with "eligible immigration status" and includes all the forms included in the letter from the city but omits the last category of documentation, any form designated by ICE. *Id.* at 40-41.

The city points out that the Ordinance specifically requires that a noncitizen show a "form designated by ICE as acceptable evidence of immigration status," Ord. § 3(B)(f)(3)(ii)(b), and the city argues that the Ordinance "does not purport to adopt those HUD regulations in their entirety, nor does it deny housing to certain individuals who are legally entitled to reside in this country, but who are not eligible to reside in public housing." Def.'s Resp. 12. The court is not persuaded by the city's argument. While noncitizens must provide evidence of a "form designated by ICE," this is only one of three pieces of evidence that such an individual must provide. The Ordinance requires that a noncitizen provide as evidence of "eligible immigration status:"

> a. A signed declaration of eligible immigration status;
> b. A form designated by ICE as acceptable evidence of immigration status; *and*
> c. A signed verification consent form.

Ord. § 3(B)(f)(3)(ii) (emphasis added). A noncitizen is still bound by the requirement of a declaration of his "eligible immigration status," a term defined consistent with 24 CFR 5 and the HUD regulations regarding housing subsidy eligibility.

The court determines that the city's reliance on the HUD regulations and documents demonstrates that the city is doing more than adopting federal immigration requirements; the city appears to be adopting federal regulations regarding housing benefits to noncitizens and using those regulations to define which noncitizens may rent an apartment in Farmers Branch. The Ordinance's clear intent to adopt the "benefits and protections provided through the HUD citizenship and immigration status certification processes," the use of the term "eligible immigration status" as defined in the context of federal housing subsidies, the requirement that noncitizens file a declaration regarding their "eligible immigration status," and the use of HUD definitions and forms is in effect defining immigration status for the purpose of the Ordinance. Because this definition is

**Memorandum Opinion and Order Granting Temporary Restraining Order – Page 14**

not consistent and coextensive with federal immigration standards, the city has attempted to regulate immigration in violation of the Constitution and the Supremacy Clause. The HUD regulations do not include all noncitizens lawfully in the country under federal immigration standards; because the Ordinance relies on or adopts HUD regulations, certain legal noncitizens will be excluded from renting an apartment in Farmers Branch. For example, a landlord who rents to certain noncitizens who are legally in the country temporarily, such as students, would be subject to criminal sanctions.

Plaintiffs also contend that because the Ordinance requires the determination of immigration status to be made by the owners and property managers of apartments in Farmers Branch, the Ordinance essentially deputizes these private individuals as federal immigration officials and takes a federal function away from the federal government. The Ordinance places the burden initially on the owner or property manager to ask tenants or potential tenants for evidence of citizenship or immigration status. Ord. § 3(B)(f)(3). Tenants may appeal to a City Building Official if they are denied occupancy because of immigration status. *Id*. § 3(B)(f)(3)(vii).

In *LULAC*, the district court held that a California proposition was a regulation of immigration, in part, because the law required that state agents determine immigration status. 908 F. Supp. at 770. That court noted that:

> state agents are unqualified – and also unauthorized – to make independent determinations of immigration status. . . . Indeed, determinations of immigration status by state agents amounts to immigration regulation whether made for the purposes of notifying aliens of their unlawful status and reporting their presence to INS or for the limited purpose of denying benefits.

*Id*. The court determines that the Ordinance burdens private citizens and city officials with making immigration status decisions based upon a scheme that does not adopt federal immigration

standards. Accordingly, the Ordinance is a "regulation of immigration" inconsistent with the federal government's rights and in violation of the first *De Canas* test.

Because the court has determined that the Ordinance is preempted, the court finds, at this stage, that there is a substantial likelihood that Plaintiffs will succeed on the merits of their preemption and Supremacy Clause claims. Given the court's determination that the Ordinance violates the Supremacy Clause, the court does not reach the parties' additional arguments regarding the other alleged constitutional and state law violations raised by Plaintiffs.

### 2. Threat of Immediate and Irreparable Harm

Plaintiffs must establish a substantial likelihood that they will suffer irreparable injury if a temporary restraining order is not granted. *Clark*, 812 F.2d at 993. A party may be irreparably injured in the face of the threatened enforcement of a preempted law. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992). The court may enjoin state officers "who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution." *Id.* (quoting *Ex parte Young*, 209 U.S. 123, 145-147 (1908)). Moreover, "[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Louisiana Seafood Mgm't Council, Inc. v. Foster*, 917 F. Supp. 439, 442 n.1 (E.D. La. 1996) (quoting 11A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Fed. Prac. & Proc. § 2948.1, p. 160-161 (1995)).

The landlord plaintiffs have established that they will be subject to fines and criminal penalties if they violate the Ordinance once it is in effect. *See* Ord. § 6 ("any person violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction

thereof shall be fined in a sum not to exceed $500"). The declarations submitted by Plaintiffs also establish that the Ordinance is likely to cause irreparable harm to the landlord plaintiffs' business because the landlords will lose business to neighboring cities and because the Ordinance casts doubt on Farmers Branch landlords' ability to lease to corporate tenants or through the internet. The tenant plaintiffs have also established irreparable harm because the Ordinance creates uncertainty with regard to legal aliens without documentation sufficient under the Ordinance. One result of this uncertainty is likely to require the tenant plaintiffs to relocate, change jobs and schools, or remain in Farmers Branch and face eviction, all harms that may not be remedied by monetary damages. *E.g.*, *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472-473 (5th Cir. 1985) ("[A]n injury is irreparable only if it cannot be undone through monetary remedies.") (internal citations and quotations omitted). Accordingly, the court determines that the second requirement has been met by Plaintiffs.

### 3. Harm to the Plaintiffs versus Harm to Farmers Branch

The court also determines that greater injury will result from denying the temporary restraining order than from granting it. *Clark*, 812 F.2d at 993. The city argues that the voters of Farmers Branch have expressed their approval of the Ordinance. The court recognizes the election results, but does not find that the voters' approval shows any harm to Farmers Branch by granting a temporary restraining order. The City Council passed the Ordinance nearly four months ago and set an election for May 12, 2007. The court simply does not understand how a delay of a few weeks in maintaining the status quo will outweigh the harm to Plaintiffs if the temporary restraining order is granted. Given that Plaintiffs have established the likelihood of irreparable injury, the

**Memorandum Opinion and Order Granting Temporary Restraining Order – Page 17**

court determines that denying a temporary restraining order would be more harmful than any injury to Farmers Branch by denying the applications.

### 4. The Public Interest

Finally, the court determines that a temporary restraining order in this case is in the public interest. As the Fifth Circuit Court of Appeals has noted, the "public interest . . . does not extend so far as to allow . . . actions that interfere with the exercise of fundamental rights." *Deerfield Med. Center v. City of Deerfield Beach*, 661 F.2d 328, 338-339 (5th Cir. 1981). Given that the court has determined at this juncture that the Ordinance is preempted by the Constitution, the public interest is served by enjoining the effective date and enforcement of a local law that the court has initially determined to be at odds with the Constitution.

## IV. Conclusion and Temporary Restraining Order

All in all, the court concludes that only the federal government may determine whether an individual is legally in the United States. Farmers Branch, rather than deferring to the federal government's determination of immigration status, has created its own classification scheme for determining which noncitizens may rent an apartment in that city. Farmers Branch has failed to adopt federal immigration standards. The Ordinance adopts federal housing regulations that govern which noncitizens may receive housing subsidies from the federal government, not federal immigration standards that determine which noncitizens are legally in this country. Because Farmers Branch has attempted to regulate immigration differently from the federal government, the Ordinance is preempted by the Supremacy Clause.

The court recognizes that illegal immigration is a major problem in this country, and one who asserts otherwise ignores reality. The court also fully understands the frustration of cities

**Memorandum Opinion and Order Granting Temporary Restraining Order – Page 18**

attempting to address a national problem that the federal government should handle; however, such frustration, no matter how great, cannot serve as a basis to pass an ordinance that conflicts with federal law.

The court, for the reasons herein stated, **determines** that the Villas and Vasquez Plaintiffs have satisfied each of the elements necessary to obtain a temporary restraining order. Accordingly, the court **grants** the Vasquez Plaintiffs' Application for Temporary Restraining Order, **grants** the Villas Plaintiffs' Application for Temporary Restraining Order**,** and **denies** the Barrientos Plaintiffs' Application for Temporary Restraining Order.

The court therefore **orders** that the City of Farmers Branch, Texas, and its officers, agents, servants, employees, representatives, or attorneys, **are hereby temporarily restrained and prohibited from effectuating or enforcing Ordinance 2903, pending a hearing on Plaintiffs' requests for preliminary injunction.** As a temporary restraining order is to preserve the status quo, and this temporary restraining order is based upon the record as it currently exists, the determinations made by the court are not final and may change after additional facts are presented, the issues of law are further developed, and the court has had an opportunity to conduct a more thorough analysis of the legal issues presented.

Rule 65(c) of the Federal Rules of Civil Procedure provides: "No restraining order . . . shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Plaintiffs ask the court to waive the bond requirement without providing any authority for such a waiver. Defendant objects and notes that without a bond, it cannot recover any damages for wrongful injunction. *W.R.*

**Memorandum Opinion and Order Granting Temporary Restraining Order – Page 19**

*Grace & Co. v. Local Union 759*, 461 U.S. 757, 770 n.14 (1983). Farmers Branch does not specify what damages it may suffer by the issuance of a temporary restraining order. The court determines that at most the harm or damage to Farmers Branch would be minimal, and that a bond of $1,500 per group of Plaintiffs is sufficient.

Accordingly, the court hereby **sets** a bond in the amount of **$1,500 for the Villas Plaintiffs** and **$1,500 for the Vasquez Plaintiffs**. This temporary restraining order shall not take effect until each group of Plaintiffs tenders to the clerk of the court $1,500 cash, or a bond for $1,500 in a form approved by the clerk of the court, in compliance with Rule 65(c) of the Federal Rules of Civil Procedure.

**It is so ordered** this 21st day of May, 2007.

Sam A. Lindsay
United States District Judge